### MEXICO–WYOMING PETROLEUM CO. et al. v. VALENTINE et al.*

(Circuit Court of Appeals, Eighth Circuit.   October 30, 1916.)

#### No. 4723.

1. MINES AND MINERALS ⟨KEY⟩81—ENFORCEMENT OF OIL LEASE—EVIDENCE.
    In a suit by a lessee of oil land to enjoin operations thereon by a later lessee, evidence offered by defendant to show the large increase in the value of the land, due to its development of the same, to affect complainant's equities, was properly excluded, where at the time of such development defendant had actual knowledge of complainant's lease.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 211; Dec. Dig. ⟨KEY⟩81.]

2. MINES AND MINERALS ⟨KEY⟩81—ENFORCEMENT OF OIL LEASE—LACHES.
    A delay of 16 months after the execution of an oil lease before suit was commenced for its enforcement does not constitute laches, in the absence of evidence showing that the situation had so changed as to render the enforcement of the lease inequitable.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 211; Dec. Dig. ⟨KEY⟩81.]

3. MINES AND MINERALS ⟨KEY⟩74—OIL LEASE—ASSIGNEE—NOTICE OF PRIOR LEASE.
    Where an assignment of an oil lease required the consent of the lessor, and the instrument by which such consent was granted recited the execution of a prior lease by the lessor, and bound the assignee to defend any suit thereon, and also provided that its conditions should be binding on the assigns of the parties, a subsequent assignee, which assumed the

obligations of its assignor, was not an innocent purchaser without notice with respect to the prior lease.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 202; Dec. Dig. ☞74.]

Appeal from the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Suit in equity by W. L. Valentine and others against the Mexico-Wyoming Petroleum Company and others. Decree for complainants, and defendants appeal. Affirmed.

Henry E. Lutz, of Denver, Colo., for appellants.

Carl L. Sackett, of Sheridan, Wyo. (W. S. Metz, of Sheridan, Wyo., and C. A. Zaring, of Basin, Wyo., on the brief), for appellee Valentine.

Before CARLAND, Circuit Judge, and TRIEBER and VAN VAL-KENBURGH, District Judges.

CARLAND, Circuit Judge. This was a suit in equity, brought in the District Court of the United States for the District of Wyoming, by the holder of an oil and gas lease covering a tract of land in Hot Springs county, Wyo., to enjoin operations under a later and similar lease, and to obtain a discovery and accounting in respect of the oil and gas produced and sold in the course of operations already had. A trial was had upon pleadings and proofs, and a decree rendered in favor of appellee, Valentine.

The Mexico-Wyoming Petroleum Company and the Great Dome Oil Company appealed from the decree. The appellee claimed the right to the possession of the premises in question for the purpose of mining oil and gas under a lease executed and delivered by Quintin Littlejohn and Agnes, his wife, for the term of 10 years, to one H. B. Gates, on the 1st day of April, 1914. On April 4, 1914, Gates transferred the lease to one Charles E. Orchard; a formal written assignment thereof from Gates to Orchard being made on April 23, 1914. On May 9, 1914, Orchard by a written assignment duly executed transferred the lease to the appellee. On the same day appellee delivered the lease to the county clerk of Hot Springs county, Wyo., for record and paid the recording fees.

The appellants claim the right to the possession of the same premises for the purpose of mining oil and gas under a lease executed and delivered by Quintin Littlejohn and Agnes, his wife, and William Littlejohn, and Jessie, his wife, for the term of 5 years, to one X. Whiting on August 3, 1914. This lease was duly recorded in the office of the county clerk and ex officio register of deeds for Hot Springs county, Wyo., August 10, 1914. On October 10, 1914, Whiting entered into an agreement with one Foley, trustee for the Mexico-Wyoming Petroleum Company, to assign said lease to Foley when this could be done; and thereafter on December 12, 1914, Foley, trustee, procured the written consent of the Littlejohn brothers and their wives to the assignment of the Whiting lease to the Mexico-Wyoming Petroleum Company, and on the 17th day of December, 1914, Whiting assigned the lease to the Petroleum Company, which entered into pos-

session of the land and commenced development.  On July 26, 1915, the Mexico-Wyoming Petroleum Company assigned the Whiting lease to E. J. De Sabla, Jr., and on August 23, 1915, De Sabla assigned the same to the Great Dome Oil Company.  After the transfer of the Whiting lease to it, the Great Dome Oil Company entered into possession of the premises in question, and has remained in possession ever since.

Before entering into the discussion of the merits, we will notice certain assignments of error based upon the admission and exclusion of evidence by the trial court.  It is claimed that the trial court erred in admitting in evidence certain notices dated October 28, 1915, and signed, respectively, by the attorney for appellee and his lessors, requiring appellants to vacate the premises in controversy and cease further trespassing thereon.  These notices were served upon appellants on the day of their date, which was over a month after the present action had been commenced.  The admission in evidence of these notices was objected to, for the reason that they could not affect the rights of the parties after suit brought.  It was stated by counsel for appellees, when the notices were offered, that they were offered to prove notice.  It is clear, we think, that the notices ought not to have been admitted; but the trial was to the court, and the admission of the notices could not have prejudiced appellants, as appears from the record, and they will not be allowed to do so here.

At the time H. B. Gates assigned his lease to Orchard, as above stated, Orchard deposited to the credit of the Littlejohns in the First National Bank of Worland, Wyo., the sum of $400, as the annual rental to be paid in advance on the lease for the year 1915.  When the witness Gates was upon the stand for appellants, their counsel inquired of the witness as to what was done with the $400 after it was deposited in the First National Bank.  The question was objected to, and the objections sustained.  Then counsel made the following offer:

"We offer to prove by this witness that in January of this year the plaintiff, Mr. Valentine, took the $400 spoken of as the payment on the Gates lease and had it transferred to his own credit, and put it into a certificate of deposit in his own name, and to prove that this was done by the direction of Mr. Quintin Littlejohn and Mr. Valentine."

An objection was sustained to this offer.  Then counsel made the following offer:

"Leaving out of that offer the matter about the form of the certificate, I desire to offer to prove by this witness that in January of this year, Mr. Gates being personally present, Mr. Valentine took this money which the Littlejohns were refusing to receive on the lease, on the ground that the lease had not been complied with, and other ground; that Quintin Littlejohn directed that it be turned back, and Mr. Valentine, the plaintiff here, took it and applied it to his own use."

This last offer was objected to as incompetent, irrelevant, and immaterial, and for the further reason that it assumed matters not proven.  The objection was sustained as to its form.

The object of the offer was for the purpose of showing that the parties to the Gates lease had abandoned it, and therefore it could not be the foundation of any rights; but the evidence shows beyond con-

tradiction that Orchard, while he was the owner of the lease, deposited the money according to the terms of the lease, and the Littlejohns were made defendants in this action, and by their answer, verified by Quintin Littlejohn, are here asserting the validity of the lease, and asking that the same be adjudged a valid instrument. If the lessors and lessees are satisfied as to the payment of the rental, the appellants may not complain. The offer was objectionable in matter of form. It did assume facts not proven. Again, on cross-examination of William D. Littlejohn, a brother of Quintin Littlejohn, and who claimed some interest in the land in question, counsel for appellants went into the question as to whether the Littlejohns received the $400. As the questions asked related to a matter not brought out in chief, appellants were bound by the answers, and the testimony showed that there had been no abandonment of the lease. There was no error in refusing the offers.

[1] When the witness Whiting was upon the stand, counsel for appellants inquired of him as to the effect, if any, which the discovery of oil on the premises in question by Whiting and his assignees had upon the value of the property. This question was objected to, and the objection was sustained, whereupon counsel made the following offer:

"We offer to prove by the witness that by their labors in this matter they increased the value of the property from not exceeding $40 an acre to about $5,000 an acre."

This was objected to as incompetent, irrelevant, and immaterial, and the objection was sustained. This offer of proof was made in connection with the defense of laches. It was for the purpose of showing that during the time Valentine was inactive in the assertion of his rights, namely, from May 9, 1914, to the time this suit was commenced in September, 1915, the premises in question, through the labors of appellants, had greatly increased in value, and therefore that it would be inequitable to enforce the rights of appellee, if any, against them. The offer was properly refused, for the reason that, when the first well was brought in upon the premises in July, 1915, the Mexico-Wyoming Petroleum Company had actual notice of the Gates lease, and the two wells, which the evidence shows were brought in by the Great Dome Oil Company, were both brought in after the commencement of the suit, and therefore all the labor and expenditure of money which in any way enhanced the value of the premises was done with full knowledge of the claims of appellee under the Gates lease. There was no error, therefore, in refusing this offer.

At the trial Whiting testified that on May 10, 1913, he had a conversation with Quintin Littlejohn, in which Littlejohn promised him (Whiting) that he would give him a lease of the land in question at any time when he (Whiting) was ready to begin operations in the field. It was further claimed that Whiting went into the possession of the land in July, 1913, and remained in possession of the same until August 3, 1914, when the written lease was executed; this for the purpose of having the Whiting lease take effect by relation as of the date of the oral promise, and thus avoid the statute of frauds and antedate the

Gates lease. In this state of the case, when Whiting was upon the stand, counsel for appellants made the following offer:

"We offer to prove by the witness that the terms of the written lease, as executed in August, 1914, were the same as the terms under the agreement made with Mr. Quintin Littlejohn, who was then the owner of the land in 1913."

This·offer was objected to as incompetent, irrelevant, and immaterial, and for the further reason that the alleged agreement was void under the statute of frauds. This objection was sustained. There was no error in this ruling for at least two reasons; one being that the evidence in the record shows beyond question that Whiting had no such possession of the premises as would take the transaction out of the statute of frauds. Whiting testified himself that from November, 1913, to the next July, he only had some stuff in a cabin situated on the premises, and was not there himself at all. The other is that Whiting, on cross-examination, was interrogated by counsel for appellee as to the same matter to which the offer referred, and Whiting without objection testified that the oral arrangement that he had with the Littlejohns was practically the same as the written lease.

Counsel for appellants, after the witness Whiting had been allowed to testify fully as to his oral agreement with Quintin Littlejohn in regard to a lease, and as to his possession of the premises in question at the time appellee became the owner of the Gates lease, made an omnibus offer to practically prove his whole case on this branch of it, to which the court replied that he thought Mr. Whiting had testified fully as to the oral agreement, and as to his possession, and that, if he had not, he would be permitted to so testify. Mr. Whiting was not sworn, nor any other witness. Thereupon the court denied the offer. We do not think there was any error in this ruling. The court was willing to admit any evidence that could be said to be material, if it did not already appear in the case.

Coming to the merits, the record discloses that appellants sought by their evidence to make three defenses: (1) Laches; (2) actual possession of the premises by Whiting under an oral promise for a lease at the time the Gates lease was taken and assigned, with the consequent claim that appellants had an equitable leasehold estate superior to that of appellee; (3) that the Great Dome Oil Company was an innocent purchaser in good faith, for value, of the leasehold granted by the Whiting lease.

[2] So far as the defense of laches is concerned, it may be summarily dismissed from consideration. From the time the Gates lease was executed to the time of the commencement of this action was about 16 months. This would be far within the statute of limitations in an action at law; hence the burden of showing that the enforcement of the Gates lease would be inequitable was upon the appellants. Mere lapse of time does not ordinarily constitute laches. The situation of the parties must have so changed as to render the prosecution of the suit inequitable. Schwartz v. Loftus, 216 Fed. 320, 132 C. C. A. 464 (8th Cir.), and cases cited.

In the present case the change in the situation of the parties,

growing out of the development of the land, was made by appellants with actual knowledge of the Gates lease, and for reasons hereinbefore stated, in discussing the admission of testimony, the defense of laches cannot prevail. Whatever the rights of appellants may have been, if Whiting, under an oral promise for a lease, had gone into the actual possession and occupancy of the premises in question, and continued in such possession, a question which we find it unnecessary to decide, there was no actual and continued possession in this case; and a court of equity would not be authorized to decree specific performance of the oral promise on the character of the possession maintained by Whiting, assuming his own evidence to be true. Beyond question he was not in possession and occupancy of the land when the Gates lease was executed and assigned. Was the Great Dome Oil Company an innocent purchaser?

[3] When the Gates lease was recorded on May 9, 1914, the record made showed no certificate of acknowledgment. It is claimed that the lease was never acknowledged, but a certificate of acknowledgment, made by Mr. Robertson, a United States commissioner for the district of Wyoming, appeared upon the lease when offered in evidence. In September, 1915, at the request of Mr. Zaring, an attorney for Mr. Valentine, the recorder of deeds added to his record a copy of this acknowledgment. This act of the recorder, however, amounted to nothing, as he had no power to change the record already made. The only way that the instrument could be recorded, so as to show the acknowledgment, would have been to refile the instrument for record, and then it would only be constructive notice from the date of the last filing. Elliott v. Peirsol, 26 U. S. (1 Pet.) 328, 7 L. Ed. 164. The trial court found that the execution of the lease was acknowledged by the lessees on the day of its date, April 1, 1914, and there is abundant evidence to sustain this finding. Under the laws of Wyoming before the lease could be lawfully recorded, it must have been acknowledged. The record, therefore, showed that the lease was not entitled to be recorded. Many decisions are cited upon the question as to whether such record is constructive notice of the lease itself.

There are three general classes of cases upon this question. There is a line of decisions which decide that, where the instrument itself is defective by reason of the fact that it was not properly witnessed or acknowledged, or contained some other vital defect, and was not entitled to record, although such defective instrument was recorded, it was not sufficient to charge a subsequent purchaser with notice. There is another line which decide that where the instrument was properly executed, witnessed, acknowledged, and entitled to record, but by some omission or mistake of the clerk the record is defective, the incomplete record, although due entirely to a mistake of the clerk or recorder, would not constitute constructive notice. There is still another line deciding that the entries upon the receiving and abstract book, when taken in connection with the record book, although the record was imperfect, taken together, are sufficient to constitute constructive notice, and that the party dealing with the land, either as purchaser or lessee,

was put upon inquiry, and would be bound by all that a reasonable inquiry would disclose.

The law of Wyoming in regard to the question of notice is found in section 3653 of the Wyoming Compiled Statutes of 1910:

"Each and every deed, mortgage, instrument or conveyance touching any interest in lands, made and recorded according to the provisions of law, shall be notice to and take precedence of any subsequent purchaser or purchasers of such land from the time of the delivery of any such instrument at the office of the register of deeds of the county in which the lands described in such instrument are situate, for record."

The Supreme Court of Wyoming, so far as we are advised, has not construed this section with reference to the point in question. The argument that under this section an instrument must be recorded in accordance with the laws of Wyoming before it is notice is very forcible. The laws of Wyoming require an instrument to be acknowledged before it can be recorded; hence it would appear reasonable to say that the record of an instrument which shows on its face that it was not entitled to be recorded is not notice. We do not think, however, that it is necessary to decide this question in the present case.

The evidence clearly shows that, when Whiting obtained his lease on August 3, 1914, he was told of the Gates lease, and that the assignee thereof, Orchard, had paid the rental as provided for therein, and that the money had been accepted; that Whiting orally agreed to protect the Littlejohns against any litigation or damages by reason of the Gates lease. The Whiting lease contained the following provision:

"It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators, successors, and assigns. This contract not assignable to any other than the Big Horn Wyoming Oil Company, except by written consent of first parties."

In the agreement and consent to the assignment of the Whiting lease, executed December 14, 1914, by the Littlejohns and Foley, trustee of the Mexico-Wyoming Petroleum Company, there appears the following agreement:

"And the said party of the second part further agrees with said parties of the first part that it will defend any and all actions at law brought in any court by H. B. Gates or his assigns, under and by virtue of any rights claimed under a certain oil and gas lease obtained by false and fraudulent representation and entered into by and between the said parties of the first part and said H. B. Gates, dated April 1, 1914, recorded in the office of the county clerk and ex officio register of deeds in and for Hot Springs county, Wyoming, instrument No. 1605, recorded on May 9, 1914, on pages No. 148, 149, 150 of Mic's Records, and that it will pay all court costs and attorney's fees necessary in such defense, and all damages assessed by the court against parties of the first part in favor of H. B. Gates, or his assigns, and if said party of the second part shall fail to make said defense to any such suit, or pay said court costs and attorney's fees for such defense, this lease shall be null and void, and they shall forfeit any and all rights acquired hereunder. * * * And for the true and faithful performance of each and all the covenants and agreements above mentioned, and in said lease, said parties bind themselves, their heirs, administrators, executors, and assigns. And parties of the

237 F.—35

second part hereby waive all right and claim for damages against first parties, in case the H. B. Gates lease shall be declared superior by the courts."

On December 18, 1914, the board of directors of the Mexico-Wyoming Company by resolution assumed the obligation made by Foley, trustee, as to protecting the Littlejohns against the Gates lease, and released Foley therefrom. July 26, 1915, as has been stated the Mexico-Wyoming Petroleum Company assigned the lease to E. J. De Sabla, Jr. August 23, 1915, De Sabla, Jr., assigned the lease to the Great Dome Oil Company. The last two assignments referred to the fact that the assignors had obtained title through mesne assignments from Whiting. De Sabla testified that he read the Whiting lease before taking an assignment thereof. If he did so, he must have learned that the lease could not be assigned without the consent of the Littlejohns, and that the conditions of the lease by the terms thereof extended to the heirs, executors, administrators, successors, and assigns of the parties to the lease. The consent of the Littlejohns was in the direct chain of title under the Whiting lease, and all purchasers were bound to take notice of it. The consent of the Littlejohns to the assignment of the lease to Foley, trustee, did not exhaust this provision of the lease, so that any future assignment could be made without the consent of the Littlejohns. De Sabla, having read the lease and being acquainted with this provision in regard to consent, received sufficient knowledge to put him upon inquiry as to whether his assignor had ever received the required consent, and this inquiry pursued would have developed the agreement between Foley and the Littlejohns. Symmes, who investigated for De Sabla the title to the property described in the Whiting lease, and made a report thereof to him, knew of the Gates lease.

The testimony of Whiting, Symmes, Stoddard, and Foley, together with their contracts, and the records of the Mexico-Wyoming Petroleum Company, showed that they had examined fully into the title of the Whiting lease, and had full knowledge of the Gates lease. The Great Dome Oil Company was organized in Nevada by De Sabla and Symmes, and Stoddard and Symmes became directors thereof. Both De Sabla and the Great Dome Oil Company employed Symmes as general manager, and Whiting as superintendent in the field, in charge of the properties. The Great Dome Oil Company gave $1,200,000 par value of its capital stock to the Mexico-Wyoming Petroleum Company for the title to the lease, and also assumed as a part of the purchase price all the debts and obligations of the Mexico-Wyoming Petroleum Company, which included the obligation to fight the Gates lease and pay the costs and attorney's fees that might be incurred in contesting the same. This evidence shows that the Mexico-Wyoming Petroleum Company had a very decided interest in the Great Dome Oil Company. Whiting was superintendent of the Mexico-Wyoming Petroleum Company, and was continued as superintendent of the Great Dome Oil Company. Symmes, who was general manager of the Mexico-Wyoming Petroleum Company, was continued as manager of the Great Dome Oil Company.

Stoddard, who was president of the Mexico-Wyoming Petroleum Company, became a director of the Great Dome Oil Company.

The burden of proof in showing that appellants were innocent purchasers of the Whiting lease was upon the appellants. A careful reading of the evidence can result in but one conclusion, and that is that De Sabla and the men who controlled the Great Dome Oil Company all knew of the Gates lease, either actually or were in possession of facts which, if investigated, would have led to such knowledge. That we cannot review the motion for a rehearing is well settled. We have not relied upon the findings of the trial court, although they are all sustained by evidence in the record, but have carefully gone through the evidence on our own account, and are of·the opinion that the decree below must be affirmed.

And it is so ordered.